**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| DEON S. GLENN, | DOCKET No. |
| Plaintiff, | JUDGE _____ |
| v. | **CIVIL ACTION** |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION DIRECTOR GARY C. MOHR (sued in his official capacity), | **COMPLAINT** |
| and | |
| TRUMBULL CORRECTIONAL INSTITUTION WARDEN CHARMAINE BRACY (sued in her official capacity), | |
| Defendants. | |

Plaintiff Deon S. Glenn, through his undersigned attorneys, states his Complaint against Defendants Ohio Department of Rehabilitation and Correction ("ODRC") Director Gary C. Mohr and Trumbull Correctional Institution ("TCI") Warden Charmaine Bracy, as follows:

**PRELIMINARY STATEMENT**

1.      This case is about Defendants' violation of Mr. Glenn's rights to exercise his Rastafarian faith, in particular Defendants' establishment, implementation, and enforcement of policies that categorically forbid the wearing of dreadlocks or "locs,"[1] as

---

[1] Rastafarians prefer the term, "locs" to "dreadlocks." The latter implies a "dreadful" quality to the hair that grows and "locs" naturally. For the sake of clarity, however, the

mandated by his religion. Defendants' policies and practices substantially burden Mr. Glenn's religious exercise without serving a compelling governmental interest in the least restrictive manner.

2.      The majority of state prison systems and the Federal Bureau of Prisons permit inmates to either wear dreadlocks or apply for religious accommodations allowing dreadlocks. Defendants' general prohibition on dreadlocks and explicit preclusion of any religious exemptions for dreadlocks run afoul of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. because they fail to serve any purported compelling interest in the least restrictive manner.

3.      In the past few years, Defendants have punished Mr. Glenn and other inmates for their religious devotion and refusal to cut their dreadlocks—ticketing them, confining them to administrative segregation, and forcibly cutting their dreadlocks.

4.      ODRC and TCI personnel have informed Mr. Glenn that he is currently on a list comprised of TCI inmates currently wearing dreadlocks, and that if he does not remove his dreadlocks, he will be subject to discipline, including warnings through tickets, assignment to limited privilege housing, confinement to administrative segregation, and the forcible cutting of his dreadlocks.

5.      Mr. Glenn previously endured the emotional trauma of ODRC and TCI personnel's cutting his dreadlocks as recently as November 2, 2016. He seeks to enjoin yet another violation of his right to religious expression and to prevent further

Complaint uses the term, "dreadlocks," because Defendants' policies employ that terminology.

emotional stress and possible physical harm for failing to comply with the prison's demands.

6. Mr. Glenn brings this civil action pursuant to RLUIPA and 42 U.S.C. § 1983. He seeks to enjoin Defendants from enforcing, implementing, or applying Ohio Administrative Code § 5120-9-25(D) ("Grooming Policy") and the Memorandum from TCI Warden LaRose to All Offenders (Nov. 30, 2014) ("No-Exception Memo")—which includes ticketing, discipline, limited privilege housing, administrative segregation, and forcible cutting—and require Defendants to end their absolute prohibition on dreadlocks, or, in the alternative, to afford Rastafarian inmates the opportunity to apply for religious accommodations permitting them to grow and wear dreadlocks.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Mr. Glenn's claims for violations of his federal statutory rights, specifically, RLUIPA, under 28 U.S.C. §§ 1331 and 1343.

8. Venue lies in this district under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this district.

## PARTIES

### The Plaintiff

9. Plaintiff Deon S. Glenn is currently an inmate at TCI, a correctional facility managed by and subject to the policies promulgated by ODRC. Mr. Glenn is a practicing Rastafarian who wears dreadlocks, as required by his faith.

### The Defendants

10. Defendant Gary C. Mohr is the Director of ODRC. At all times relevant to the Complaint, Defendant Mohr had and has the authority to manage, direct, and establish rules and regulations for the various institutions of ODRC. Ohio Rev. Code § 5120.01. Defendant Mohr oversees all Ohio prison institutions, including TCI, as well as the departments responsible for creating both grooming and religious accommodation policies.

11. Upon information and belief, Defendant Mohr authorized or ratified all ODRC policies and ODRC and TCI personnel's actions alleged in the Complaint.

12. Defendant Charmaine Bracy is the Warden of TCI. At all times relevant to the Complaint, Defendant Bracy served as the managing officer responsible for making final institutional determinations on inmate religious accommodation requests. *Id.* § 5120.38. Defendant Bracy is also responsible for overseeing the enforcement of grooming policies at TCI.

13. Upon information and belief, Defendant Bracy authorized or ratified all TCI policies and TCI personnel's actions alleged in the Complaint.

4

## FACTUAL ALLEGATIONS

### Mr. Glenn's Rastafarian Faith and Practices

14.     Mr. Glenn is a committed member of the Rastafarian faith.

15.     Rastafarianism is an Abrahamic religion.

16.     The first branch of Rastafarianism was established in 1935.

17.     The Federal Bureau of Prisons recognizes Rastafarianism as a religion. U.S. Dep't. of Justice, Fed. Bureau of Prisons, Inmate Religious Beliefs and Practices Guide 274 (2002), http://www.acfsa.org//documents/dietsReligious/FederalGuidelinesInmateReligious BeliefsandPractices032702.pdf.

18.     Wearing dreadlocks is a major tenet of Mr. Glenn's Rastafarian faith. Rastafarians believe that hair must grow and "loc" naturally, symbolizing the Lion of Judah and the Nazarites in the Bible. Dreadlocks embody Rastafarians' commitment to live "righteously and naturally" and reflect an "outward commitment" to Jah, or God. *Id*.

19.     Rastafarians take the Nazarite vow, which they believe is commanded by the Bible: "They shall not make baldness upon their head, neither shall they shave off the corner of their beard, nor make any cuttings in their flesh." (Leviticus 21:5).

### Defendants Enforce the Grooming Policy and No-Exemptions Memo as an Absolute Prohibition on Dreadlocks

20.     Ohio's Grooming Policy states that "[t]he following hairstyles or facial hair are not permitted: Initials, symbols, dyes, multiple parts, hair disproportionately

longer in one area than another (excluding natural baldness), weaves, and dreadlocks."
Ohio Administrative Code § 5120-9-25(D).

21.     Defendants interpret and enforce the Grooming Policy as an absolute
prohibition on dreadlocks in ODRC facilities and refuse to consider or grant inmates'
religious accommodation requests to maintain dreadlocks.

22.     In November 2014, former TCI Warden Christopher LaRose distributed a
memorandum, the No-Exemptions Memo, concerning dreadlocks, stating, in bold, that
all offenders should "**[b]e advised there are no religious exemptions for this
hairstyle**." (Memorandum from Warden LaRose to All Offenders (Nov. 30, 2014))
(emphasis in original) (Ex. A). The No-Exemptions Memo further states that, "offenders
who are non-compliant will be issued a conduct report and forced to have your
dreadlocks cut." *Id.* Ohio Administrative Code § 5120-9-25(I) authorizes forced haircuts
when the Rules Infraction Board ("RIB") determines that an inmate's hair is non-
compliant with the Grooming Policy and the inmate refuses to comply with orders to
cut his hair.

23.     The No-Exemptions Memo reflects current, state-wide ODRC prison
policy in effect at TCI and other Ohio prisons.

24.     ODRC and TCI personnel have previously disciplined Rastafarian inmates
with dreadlocks, including Mr. Glenn, for violating the Grooming Policy and No-
Exemptions Memo.

25.     ODRC and TCI personnel have previously forcibly cut Rastafarian inmates' dreadlocks, including Mr. Glenn's dreadlocks, as part of their enforcement of the Grooming Policy and No-Exemptions Memo.

### Defendants' Grooming and No-Exemptions Memo Policies Effectively Prohibit Rastafarian Inmates from Seeking Religious Accommodations for Wearing Dreadlocks

26.     Despite Ohio's facially-neutral religious accommodation policy, the Grooming Policy and No-Exemptions Memo effectively disallow Mr. Glenn and any other Rastafarian inmates an opportunity to seek a religious accommodation for dreadlocks.

27.     ODRC's policy on Institutional Religious Services states that it is departmental policy "to ensure that inmates, who wish to do so, may subscribe to any religious belief they choose." ODRC 72-REG-01(V).

28.     ODRC establishes religious accommodation procedures that are intended for inmates seeking accommodations "not addressed directly within policy." ODRC 72-REG-02(IV).

29.     The Grooming Policy and No-Exemptions Memo, however, amount to restrictions that allow no religious accommodations for dreadlocks under any circumstances.

30.     By the very terms of the Grooming Policy and No-Exemptions Memo, ODRC and TCI personnel could not and did not make individual assessments of Mr. Glenn's religious accommodation requests.

7

31.     As a result, Mr. Glenn's requests for religious accommodations for dreadlocks have not been granted. Nor could they have been granted.

**The Vast Majority of Jurisdictions Implement Grooming Policies Permitting Rastafarian Inmates to Wear Dreadlocks or Seek Accommodations for Dreadlocks**

32.     At least 39 jurisdictions and correctional departments, including the Federal Bureau of Prisons ("BOP"), allow inmates to maintain dreadlocks or allow Rastafarian inmates to apply for religious accommodation permitting dreadlocks. *Ware v. La. Dep't of Corr.*, 866 F.3d 263, 273 (5th Cir. 2017).

33.     The BOP, for example, permits an inmate to select a hairstyle of personal choice. 28 C.F.R. § 551.1; US. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5230.05, (Nov. 4, 1996) (addressing grooming). The BOP provides prison officials extensive information on the Rastafarian religion, outlining the importance of dreadlocks and the biblical justifications against cutting hair. U.S. Dep't. of Justice, Fed. Bureau of Prisons, Inmate Religious Beliefs and Practices Guide 274.

34.     The New York State Department of Corrections and Community Supervision specifically allows any inmate that is "**Rastafarian**, Taoist, Sikh, Native American, Orthodox Jew or member of any other religious sect of a similar nature" an exception to its haircut requirement. N.Y. St. Corr. & Cmty Supervision, Inmate Grooming Standards (Mar. 1, 2013) (emphasis added).

35.     The Wyoming Department of Corrections states that "hairstyles that are religiously indicated by the mandatory tenets of the inmate's professed religion, as verified by an approved religious representative of that faith . . . will be authorized as

long as the hair is capable of being searched and does not present a health or safety hazard (i.e., Orthodox Judaism, Native American, **Rastafarian**, Sikh.)" Wyo. Dep't of Corr., Inmate Handbook 8 (2013) (emphasis added).

36.     Several jurisdictions require searches of inmates' hair but forbid forcible cuts. For example, the Tennessee Department of Corrections Policy states that "inmates shall be routinely subject to searches of hair" but "forcible cutting or trimming shall not be done except upon orders of a physician for health reasons." Tenn. Dep't of Corr., Administrative Policies and Procedures 502.03 (2015).

37.     Ohio, however, substantially burdens Rastafarian inmates' ability to freely practice their religion by prohibiting dreadlocks and authorizing forced haircuts. TCI compounds the burden by categorically denying religious exemptions to the prohibition, thereby denying all Rastafarians the right to practice their religious faith.

**Defendants' Enforcement of the Grooming Policy and No-Exemptions Memo is Not Necessary to Ensure Prison Security**

38.     Despite the absolute prohibition on dreadlocks established by the Grooming Policy, ODRC institutions have not consistently enforced the prohibition on dreadlocks against Mr. Glenn and other inmates, undermining any purported security and prison safety interests furthered by the Grooming Policy.

39.     Despite an October 9, 2014 Memorandum from ODRC's Transportation Coordinator, Erlana Schorr, specifically reiterating that inmates are prohibited from wearing dreadlocks during transport, ODRC personnel have permitted inmates to wear dreadlocks during their transfers between different ODRC institutions.

9

40.     On numerous occasions, inmates with dreadlocks have satisfied security or prison safety interests by running their own fingers through their hair after turning their heads upside-down.

### ODRC and TCI Personnel's Prior Enforcement of the Grooming Policy and No-Exemptions Memo Against Deon Glenn

41.     ODRC and TCI personnel have previously disciplined and segregated Mr. Glenn and forcibly cut his dreadlocks in response to his expression of faith and violation of the Grooming Policy and No-Exemptions Memo.

42.     Mr. Glenn has been a practicing Rastafarian since 2012.

43.     In 2012, TCI personnel informed Mr. Glenn that inmates who were entered in the TCI computer system as Rastafarians would be allowed to keep their dreadlocks.

44.      Mr. Glenn has been entered in the TCI computer system as Rastafarian since 2012 and received a printout from the prison chaplain to evidence this fact.

45.     In September 2016, ODRC and TCI personnel informed Mr. Glenn that he must cut his dreadlocks.

46.     Mr. Glenn refused to cut his dreadlocks based on his religious commitments and obligations, likening his hair to "[his] Church."

47.     Because of his refusal to cut his dreadlocks, ODCR and TCI personnel placed Mr. Glenn in administrative segregation from October 6, 2016 through November 2, 2016.

48.     On November 2, 2016—a holy day in the Rastafarian faith called "Coronation Day"—ODRC and TCI personnel removed Mr. Glenn and his cellmate from their cell and escorted them to an area that Mr. Glenn refers to as "the cage."

49.     Once in the cage, ODRC and TCI personnel gave Mr. Glenn two "options": (1) subject himself to a prion barber's haircut; or (2) be pepper-sprayed, held down, and forcibly cut by prison personnel.

50.     After considerable pressure by ODRC and TCI personnel, a prison barber cut Mr. Glenn's hair.

51.     Mr. Glenn shook through the entire cutting, and described the experience as "emasculating."

52.     ODRC and TCI personnel's coercive pressure, threats, and ultimate cutting of his dreadlocks violated Mr. Glenn's religious tenets.

### ODRC and TCI Personnel's Renewed and Current Enforcement of the Grooming Policy and No-Exemptions Memo Against Deon Glenn

53.     In early January 2018, TCI personnel informed Mr. Glenn that he was on a list of 15 inmates who must cut their dreadlocks by January 12. Should he not comply with the request to cut his hair, TCI personnel informed him that he may be subjected to discipline, limited privilege housing, administrative segregation, and the forcible cutting of his dreadlocks.

54.     Mr. Glenn's unit manager informed him that no religious accommodations would be considered for his dreadlocks.

55.     On January 11, the Ohio Attorney General's Office confirmed to Mr. Glenn's counsel that TCI officials had created a list of 15 TCI inmates with dreadlocks who must cut their hair, consistent with the Grooming Policy and No-Exemptions Memo.

56.     The Ohio Attorney General's Office further confirmed that TCI's ban on religious exemptions reflects ODRC policy.

57.     As a devout Rastafarian, Mr. Glenn still desires to maintain dreadlocks as an exercise of his religious beliefs.

58.     On January 19, Mr. Caja, a unit manager at TCI, issued a ticket to Mr. Glenn for refusing to cut his hair.

59.     Mr. Glenn will not comply with the prison order to cut his hair out of commitment to his Rastafarian faith.

60.     On January 25, the Ohio Attorney General's Office confirmed to Mr. Glenn's counsel that Mr. Glenn remained on a list of TCI inmates with dreadlocks who must cut their hair.

61.     On that same day, TCI personnel began RIB procedures relating to Mr. Glenn's disobedience of the order to cut his hair.

62.     The RIB found Mr. Glenn guilty of R-21 ("disobedience of a direct order"). (Ex. B).

63.     The RIB explained its decision:

The board finds Inmate Glenn 563254 guilty of R-21. The board believes that Inmate Glenn is not in compliance with AR-5120-9-25, Appearance

and Grooming of Male Inmates. Inmate Glenn hairstyle is in dreadlocks which is not permitted per AR-5120-9-20 (d). Inmate Glenn was given a directive to get his hairstyle in compliance with AR-5120-9-25 which he refused. (Ex. B).

64.    The RIB elaborated that it did not believe Mr. Glenn's defense because "inmates [sic] self defense  in [sic] not in compliance AR-5120-9-25." (Ex. B).

65.    The RIB then issued its disposition and reasoning:

The boards [sic] finds Inmate Glenn in violation of 5120-9-25. Inmate Glenn you are ordered to bring your hair into compliance with AR 5120-9-25. 90 days LPH [limited privilege housing], on the shelf unless non-compliant by March 1, 2018. Visitation and program restriction that involves any participation from outside guests. Order will be lifted upon compliance. Subject to a force haircut per 5120-9-25(I). (Ex. B).

66.    On February 1, Mr. Glenn appealed the RIB's decision. Mr. Glenn is without any other recourse to obtain relief from his assignment to limited privilege housing prior to March 1. His appeal does not stay the RIB's disposition. *See* Ohio Administrative Code § 5120-9-08(M)(4).

67.    Based on his religious beliefs, Mr. Glenn will not comply with the RIB order to cut his hair.

68.    Mr. Glenn fears that on March 1, ODRC and TCI personnel will assign him to limited privilege housing, per the RIB disposition, restricting his visitation and access to programs.

69.    Inmates assigned to limited privilege housing may be confined to their cells for nearly 22 hours per day, with only 1 hour outside. Ohio Administrative Code § 5120-9-09(E)(9).

70.     Mr. Glenn fears that soon after March 1, ODRC and TCI personnel will confine him to administrative segregation and forcibly cut his hair—per the RIB disposition, Ohio Administrative Code § 5120-9-25(I), and his and other Rastafarian inmate's prior treatment—in violation of his faith.

71.     As a result of Defendants, their agents, and personnel's implementation and enforcement of the Grooming Policy and No-Exemptions Memo, Mr. Glenn has experienced ongoing discomfort, distress, and discrimination for expressing his religion.

72.     Defendants' imminent assignment of Mr. Glenn to limited privilege housing and likely confinement to administrative segregation and forcible cutting of his dreadlocks has caused Mr. Glenn great fear and anxiety over being disciplined, emasculated, and even physically harmed for expressing his religion.

### CAUSE OF ACTION:
### VIOLATION OF THE RELIGIOUS LAND USE AND
### INSTITUTIONALIZED PERSONS ACT, 42 U.S.C. § 2000cc et seq. ("RLUIPA")

73.     Mr. Glenn repeats and re-alleges the preceding paragraphs as if fully set forth herein.

74.     Defendants' institutional agencies, ODRC and TCI, receive federal funds.

75.     Defendants' enforcement of the Grooming Policy and No-Exemption Memo through ticketing, discipline, threatened and likely limited privilege housing, administrative segregation, and forcible cutting of dreadlocks, as well as their refusal to consider or individually assess religious accommodation requests, substantially burdens Mr. Glenn's sincerely held religious beliefs and practices.

14

76. Defendants have not established a compelling state interest in preventing Mr. Glenn from wearing dreadlocks. Moreover, Defendants have not demonstrated that enforcing the Grooming Policy and No-Exemption Memo through ticketing, discipline, limited privilege housing, administrative segregation, and forcible cutting furthers any compelling state interests.

77. Defendants' absolute prohibition on dreadlocks is not the least restrictive means to furthering governmental interests. Defendants have previously utilized less restrictive means, such as requiring Rastafarians to turn their heads upside-down and run their fingers through their hair, to ensure that their dreadlocks do not jeopardize prison security or safety. The majority of state and federal prison institutions do not categorically prohibit the wearing of dreadlocks and do not categorically prohibit religious exemptions or accommodations for dreadlocks.

78. Defendants therefore violated and continue to violate Mr. Glenn's rights under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq.

## PRAYER FOR RELIEF

Plaintiff Deon Glenn requests judgment against Defendants as follows:

a. A preliminary and permanent injunction against Defendants from enforcing, implementing, or applying Ohio Administrative Code § 5120-9-25(D) and the Memorandum from TCI Warden LaRose to All Offenders (Nov. 30, 2014) through such means as ticketing, discipline, punishment, limited privilege housing, administrative segregation, and forcible cutting, and require them to afford Rastafarian inmates the opportunity to apply for religious accommodations permitting them to grow and wear dreadlocks.

b. A declaratory judgment that Defendants' enforcement, implementation, and application of Ohio Administrative Code § 5120-9-25(D) and the Memorandum from TCI Warden LaRose to All Offenders (Nov. 30, 2014) against Mr. Glenn violate RLUIPA;

c. A declaratory judgment that Ohio Administrative Code § 5120-9-25(D) and the Memorandum from TCI Warden LaRose to All Offenders (Nov. 30, 2014) violate RLUIPA

d. Reasonable costs and attorney fees pursuant to 42 U.S.C. § 1988.

e. Any other or further relief as this Court may deem appropriate and equitable.

Dated: February 22, 2018
Cleveland, Ohio

CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
MILTON A. KRAMER LAW CLINIC CENTER
11075 East Boulevard
Cleveland, Ohio 44106
(216) 368-2766
avidan.cover@case.edu

By:     /s/ Anthony Cirranello, Jr._____
Antony Cirranello, Jr.
Legal Intern
*Pending permission to appear under Local Rule 83.6*

/s/ Lindsay Cook_____
Lindsay Cook
Legal Intern
*Pending permission to appear under Local Rule 83.6*

/s/ Valerie Villacampa_____
Valerie Villacampa
Legal Intern
*Pending permission to appear under Local Rule 83.6*

/s/ Avidan Y. Cover_____
Avidan Y. Cover (0087534)
Attorney at Law
*Attorneys for Plaintiff Deon S. Glenn*

CV-3690-PLDG-E-File-180222-GLENN COMPLAINT